**Shirley A. COX and Eugene S. Cox, Appellants,**

v.

**Charles E. JONES, and Jones Eye Clinic, P.C., Appellees.**

No. 90–304.

Supreme Court of Iowa.

May 15, 1991.

Rehearing Denied June 19, 1991.

**24**

Kay E. Dull and William L. Miller, Sioux City, for appellants.

Michael W. Ellwanger of Kindig, Beebe, Rawlings, Nieland, Probasco & Killinger, Sioux City, for appellees.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO and ANDREASEN, JJ.

SCHULTZ, Justice.

The issue in this medical malpractice action is whether plaintiffs had lost the right to introduce expert testimony because of their failure to designate an expert within the time required by Iowa Code section 668.11 (1987).[1] The district court sustained defendants' motion to strike plaintiffs' designation of their only expert on the ground that the expert was certified over a year past the statutory deadline. The court then granted defendants' summary judgment motion on the basis that plaintiffs could not establish liability without expert testimony. We agree with the district court's ruling and vacate the court of appeals' decision reversing it.

In November 1985, defendant ophthalmologist, Charles E. Jones, performed a cataract removal operation on Shirley Cox's left eye and implanted an intraocular lens. Cox returned to the Jones Eye Clinic, P.C., owned by defendant Jones, for two follow-up visits in January and February 1986. Cox claims she contacted defendant's clinic again in December 1986, regarding her deteriorating vision. She contends that the clinic staff requested that she pay $50.00 or provide proof of insurance prior to an appointment because her outstanding bills had not been paid. Cox then saw another physician, Larry M. Zweben, who referred her to University Hospitals and Clinics in Iowa City where emergency surgery was performed on December 18 for a detached retina of the left eye. Cox maintains that she sustained injuries causing almost total blindness in her left eye.

---

1. The early identification of experts by a plaintiff in a medical malpractice action is mandated by section 668.11 which provides in relevant part:

    1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:

      *a.* The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.

      *b.* The defendant within ninety days of plaintiff's certification.

    2. If a party fails to disclose an expert pursuant to subsection 1 ... the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

    .    .    .    .    .

In May 1988, Cox and her husband filed this action against Jones and his clinic. Defendants filed an answer on June 9, 1988. The 180–day statutory deadline for certifying an expert witness expired in December 1988. Plaintiffs neither filed a certification nor requested an extension from the court before the 180–day deadline expired in December 1988. On January 9, 1990, plaintiffs filed a certification designating Zweben as their expert.

Defendants moved to strike the designation of plaintiffs' expert witness on the ground that plaintiffs filed the certification thirteen months past the 180–day deadline required by section 668.11. The district court sustained defendants' motion to strike Zweben's expert testimony on the issue of medical negligence or standard of care. However, the court did not prohibit Zweben from testifying regarding his care and treatment of Cox. The court noted that plaintiffs never asked the court for an extension of the 180–day statutory deadline as permitted by Iowa Code section 668.-11(2); however, the court made it clear that plaintiffs had not shown good cause for leave to extend the time period.

Defendants then moved for summary judgment, contending that the lack of any expert evidence precluded plaintiffs from proving any of their medical negligence claims. The district court granted summary judgment and dismissed plaintiffs' lawsuit.

On appeal, plaintiffs first challenge the ruling striking their designation of an expert. Second, plaintiffs maintain that the district court erred in granting summary judgment. We address these claims in turn.

■ I. *Designation of expert witness.* Plaintiffs urge that defendants had adequate notice of Zweben's involvement in this case and have not been prejudiced by any delay in designating Zweben as an expert. They emphasize that their answers to interrogatories given in July 1989 indicated that Zweben was Cox's treating physician and had knowledge of the facts regarding his treatment of Cox. Also, plaintiffs urge that Cox described the treatment

rendered by Zweben in a deposition taken in July 1989. However, plaintiffs simply ignore the fact that the interrogatory answers and deposition were provided seven months after the statutory deadline and do not comply with the legislative mandate that a plaintiff "shall certify ... the expert within ... one hundred eighty days of the defendant's answer...." Iowa Code § 668.11. Absent a showing of good cause, plaintiffs had already lost their opportunity to call experts in July 1989. The district court concluded plaintiffs failed to show good cause for not listing Zweben as an expert. We agree with the district court's conclusion. Good cause under 668.11 must be more than an excuse, a plea, or justification for the resulting effect. *Thomas v. Fellows,* 456 N.W.2d 170, 172 (Iowa 1990); *Donovan v. State,* 445 N.W.2d 763, 766 (Iowa 1989). Consequently, we conclude that the district court did not abuse its broad discretion by precluding Zweben's expert testimony.

■ Plaintiffs also contend that in a professional malpractice case a treating physician not previously designated as an expert under section 668.11 may testify as an expert. We do not believe that section 668.11 provides such an exception. Professional liability cases, especially medical malpractice actions, require expert testimony of a technical nature concerning standards of care and causation. A treating physician may qualify as an expert. However, until a treating physician is designated as an expert pursuant to section 668.11, the opposing party should be able to expect that a treating physician's testimony will not include opinions on reasonable standards of care or causation. If a treating physician gives these opinions in his testimony, we believe logic and the plain language of section 668.11 require that a treating physician be certified as an expert.

In establishing a deadline by which both parties must have named their experts, the legislature obviously intended to provide an element of certainty in professional liability cases. As a result, speculation about the identity of experts and last minute dismissals are prevented when an expert cannot

be found. Allowing a treating doctor to testify as an expert, without prior designation as an expert, defeats the legislature's purpose in enacting section 668.11.

Thus, we find no merit in plaintiffs' contention that the requirements of section 668.11 do not apply to treating physicians. We hold that the district court did not err in denying the introduction of Zweben's expert testimony. Next, we must determine whether plaintiffs can prove their medical negligence claims against defendants without expert testimony.

II. *The summary judgment.* Plaintiffs contend that the trial court erred in sustaining defendants' motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). In this case, the issue becomes "not whether there was *negligence* in the actions of the defendant but whether there was *evidence* upon which liability could be found." *Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990) (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989)) (emphasis in original). Our task is to determine whether any evidence in the summary judgment record enables plaintiffs to establish the applicable standards of care, and defendants' breach of those standards. *Oswald*, 453 N.W.2d at 640.

■ Plaintiffs contend that even in the absence of expert testimony, material issues of fact remain that could be determined by a lay jury. Specifically, they argue that expert testimony is not required to show lack of informed consent, negligence in failing to schedule follow-up visits, and abandonment. The general rule is that proof of specific negligence of a physician requires expert testimony. *Perin v. Hayne*, 210 N.W.2d 609, 613 (Iowa 1973). Exceptions to this rule are recognized through a showing that even laypersons could comprehend a physician's lack of care, or that a physician injured a part of the body not involved in the treatment. *Id.* In this case, plaintiffs rely on the first stated exception.

■ In plaintiffs' lack of informed consent claim, they contend that Cox was not informed of the risk of retinal detachment prior to undergoing surgery. The first element under this theory of recovery is "the existence of a material risk unknown to the patient.…" *Pauscher v. Iowa Methodist Medical Center*, 408 N.W.2d 355, 360 (Iowa 1987). Knowledge of the nature, likelihood of occurrence, and materiality of retinal detachment certainly are not factors within the common knowledge of laypersons and require the introduction of expert evidence. *See id.* Therefore, without expert evidence, plaintiffs cannot show that defendants did not inform Cox of the existence of a material risk before undergoing the cataract removal operation.

■ Plaintiffs' claim of inadequate follow-up care would also ultimately require expert testimony regarding (1) whether a retinal detachment was occurring at the time of the follow-up visits; and (2) the appropriate standard of follow-up care for a cataract extraction. *See Surgical Consultants, P.C. v. Ball*, 447 N.W.2d 676, 678–79 (Iowa App.1989). Plaintiffs cannot introduce this essential expert testimony. Consequently, a lay jury's determination of whether Cox was instructed to return for another follow-up visit would not be dispositive on plaintiffs' claim of inadequate follow-up care.

■ We now turn to plaintiffs' claim of abandonment. A physician who leaves a patient in a critical stage of a disease without reason or sufficient notice to enable the patient to secure another physician is subject to liability to that patient. *McGulpin v. Bessmer*, 241 Iowa 1119, 1127, 43 N.W.2d 121, 125 (1950). To prove abandonment, a plaintiff patient must show that the abandonment occurred during a critical stage of the patient's disease or treatment. *Id.; Surgical Consultants*, 447 N.W.2d at 682. Even if a jury could determine that defendants refused to treat Cox because her bill was past due, expert evidence would be required to establish that Cox was at a critical stage of medical care when defendants allegedly withdrew medical treatment. Consequently, without expert

testimony which plaintiffs cannot introduce, an abandonment cause of action cannot be proven.

For these reasons, we conclude that plaintiffs' claims of lack of informed consent, failure to provide adequate follow-up care, and abandonment are all issues beyond the common knowledge of laypersons, require expert evidence, and are not appropriate for jury determination under this record.

In summary, we hold that the district court did not err in striking plaintiffs' untimely certification of an expert witness and in granting defendants' summary judgment motion. We affirm the district court's summary judgment ruling dismissing plaintiffs' petition.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.