**Lola J. CARSON, Appellant,**

v.

**John WEBB, Appellee.**

**No. 91–503.**

Supreme Court of Iowa.

June 17, 1992.

L. Jay Irwin III of Irwin & Associates, P.C., Des Moines, Brent A. Cashatt of Smith, Schneider, Stiles, Wimer & Hudson, Des Moines, and Jon Anderson, Des Moines, for appellant.

Terrence A. Hopkins of Hopkins & Huebner, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

CARTER, Justice.

Plaintiff, Lola J. Carson, who recovered a verdict less than her medical expenses in a civil assault and battery action against her brother, defendant John Webb, appeals from district court rulings on evidence and jury instructions. After considering the arguments that have been presented, we reverse the judgment of the district court and remand the case for a new trial on damages only.

The evidence reflects that, while both plaintiff and defendant were present in their mother's home on April 12, 1988, they became embroiled in a heated argument. The subject of this dispute was the failure to invite plaintiff to the impending wedding of defendant's daughter. As the controversy progressed, defendant demanded that plaintiff leave.

Plaintiff suggested to defendant that if he wished her to depart the premises he would have to throw her out. Defendant responded by dragging plaintiff, kicking and screaming, to the door and dropping her on the ground outside. For this act, defendant was subsequently convicted, upon his plea of guilty, of the public offense of simple assault.

In the trial of this civil action, the defendant contested the extent of the injuries plaintiff alleged to have occurred from his assaultive conduct. The jury returned a verdict for plaintiff in the amount of $4500. This was less than the medical expenses that plaintiff claimed to have occurred as a result of defendant's battery.[1]

During the trial, evidence was admitted over plaintiff's objection that some of her medical bills for which recovery was being sought had been paid by insurance. Plaintiff challenges that evidentiary ruling and, in addition, contends that the district court erred in not instructing the jury that her right of recovery for these expenses should in no way be diminished as a result of these collateral source payments. Plaintiff also seeks to establish reversible error as a result of limitations that the district court placed on testimony from her treating physicians.[2] Other facts relevant to the case will be considered in our discussion of the legal issues that have been presented.

I. *Evidentiary Rulings and Jury Instructions Involving the Collateral Source Rule.*

We first consider plaintiff's contention that the district court erred in permitting

---

1. Statements showing medical bills of $4841 were admitted into evidence. Defendant did not dispute that these charges were reasonable and proper but did dispute that they were attributable to injuries sustained from the alleged assault and battery.

2. The district court limited the testimony that could be received from plaintiff's treating physicians on the ground that they had not been designated as expert witnesses within the time required by Iowa Rule of Civil Procedure 125(c).

evidence of collateral source payments and in refusing to instruct the jury that any recovery of medical expenses proximately caused by defendant's tortious conduct should not be diminished as a result of such payments. Plaintiff's argument on this point is simple and direct. She points out that the district court's ruling was expressly posited on Iowa Code section 668.14 (1987). That statute, she urges, is not applicable to intentional tort claims.

■ Defendant does not respond to the argument concerning applicability of section 668.14 to intentional torts. Instead, he contends that plaintiff failed to preserve error on this issue. We disagree. Plaintiff made the collateral source rule the subject of a motion in limine. That motion was denied, unequivocally, by the trial court on the basis that section 668.14, as a matter of law, allowed the evidence of medical insurance payments to be admitted. Unlike some rulings in limine, nothing was left for later determination with respect to receipt of this evidence. Error was thus preserved on the issue.

■ On the substantive claim that plaintiff advances, we agree that section 668.14 has no applicability to intentional torts, either as a rule of evidence, or a rule of recovery diminution. *See Nieman v. Heil Co.*, 471 N.W.2d 790, 791 (Iowa 1991) (collateral source rule viable where chapter 668 does not apply); *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 180–81 (Iowa 1990) (chapter 668 not applicable to fraud or intentional torts). The error in permitting proof of collateral source payments was compounded by the trial court's failure to instruct the jury, as plaintiff requested, that any recovery of medical expenses caused by defendant's willful tort should not be diminished by reason of those payments. These rulings require a new trial on damages.

II. *Scope of Testimony That May Be Given by Treating Physicians Not Listed as Expert Witnesses.*

■ The other question that must be answered on this appeal is whether the district court improperly restricted the testimony that could be given by physicians who had treated plaintiff for the injuries that she allegedly sustained from defendant's tortious act. Plaintiff failed to designate these physicians as expert witnesses as provided in Iowa Rule of Civil Procedure 125(c). As a consequence of that omission, the district court ruled that any opinion evidence from these physicians that could not be the subject of lay testimony would be excluded. Plaintiff contends that this ruling was overly restrictive. We agree.

The starting point for resolution of this question is the language of rule 125(a)(1), which provides in part:

Nothing in this rule shall be construed to preclude a witness from testifying as to (1) knowledge of the facts obtained by the witness prior to being retained as an expert or (2) mental impressions or opinions formed by the witness which are based on such knowledge.

In *Day v. McIlrath*, 469 N.W.2d 676 (Iowa 1991) (per curiam), we observed with respect to rule 125 disclosure that:

The question raised here is whether the factual knowledge, mental impressions and opinions of a treating physician were "acquired or developed in anticipation of litigation or for trial," thereby requiring rule 125 disclosure with regard to a treating physician. We answer this question in the negative. A treating physician ordinarily learns facts in a case, and forms mental impressions or opinions, substantially before he or she is retained as an expert witness, and often before the parties themselves anticipate litigation. We believe a treating physician ordinarily focuses, while treating a patient, on purely medical questions rather than on the sorts of partially legal questions (such as causation or percentage of disability) which may become paramount in the context of a lawsuit.

*Id.* at 677.

■ Applying our observation in *Day* to the present facts, we believe that the district court erred in concluding that plaintiff's failure to disclose her treating physicians in interrogatory answers required ex-

clusion of all opinion evidence that could not be the subject of lay testimony. Rather, the paramount criterion is whether this evidence, irrespective of whether technically expert opinion testimony, relates to facts and opinions arrived at by a physician in treating a patient or whether it represents expert opinion testimony formulated for purposes of issues in pending or anticipated litigation.

We do not believe the view that we take of rule 125 is inconsistent with our interpretation of Iowa Code section 668.11 (1987) in *Cox v. Jones*, 470 N.W.2d 23, 25 (Iowa 1991). The expert opinion testimony excluded in *Cox* concerned reasonable standards of medical care and causation. Reasonable standards of medical care, as that subject arose in the *Cox* medical malpractice litigation, was not a matter for which the physician was required to formulate an opinion in treating a patient. Nor was the element of causation involved in that case.[3]

For the reasons stated, we believe that the district court's restrictions on the testimony that could be given by plaintiff's treating physicians also requires a reversal and new trial. Other issues raised by the parties need not be considered. The new trial that we order is on damages only.

REVERSED AND REMANDED.

---

**3.** We do not believe, however, that the language concerning expert opinion of "causation" in *Cox* (with respect to section 668.11) or in *Day* (with respect to rule 125) was meant in either case to establish that *all* expert opinions of treating physicians as to causation are matters for which disclosure is required under the statute or rule. Some conclusions concerning causation relate directly to the treatment of a patient and are thus outside the scope of section 668.11 or rule 125.